IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TOM JAMES COMPANY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:24-cv-01310 ) Judge Aleta A. Trauger |
| SETH RICH, | ) ) |
| Defendant. | ) |

# MEMORANDUM

Tom James Company ("Tom James") has sued its former employee, Seth Rich, for using its confidential customer list and soliciting its customers for his new employer, a competitor. Rich has filed a Partial Motion to Dismiss (Doc. No. 21), which, for the reasons set forth herein, will be denied.

**I. PROCEDURAL HISTORY**

Tom James filed a Complaint (Doc. No. 1) along with an employment agreement it signed with Rich ("Agreement") (Doc. No. 1-1). The Complaint alleges five causes of action: breach of contract (Count I) (Compl. ¶¶ 42–50), tortious interference with prospective economic advantage or business relationships (Count II) (*id.* ¶¶ 51–60), misappropriation of trade secrets under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1831 *et seq.* ("DTSA") (Count III) (*id.* ¶¶ 61–69), misappropriation of trade secrets under the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. § 47-25-1701 *et seq.* ("TUTSA") (Count IV) (*id.* ¶¶ 70–78), and breach of fiduciary duty (*id.* ¶¶ 79–84) (Count V). Tom James seeks compensatory and punitive damages, costs and fees, disgorgement, and an order requiring Rich (a) to return or destroy the proprietary information he allegedly took and (b) to adhere to the Agreement's restrictive covenants. (*Id.* at 14–16.) Rich has

filed a Partial Motion to Dismiss (Doc. No. 21) under Federal Rule of Civil Procedure 12(b)(6) seeking dismissal of Counts II through V of the Complaint, with an accompanying Memorandum (Doc. No. 22), to which Tom James has filed a Response (Doc. No. 24) and in further support of which Rich has filed a Reply (Doc. No. 26).

## II. FACTS[1]

Tom James is a "leading national and international" bespoke clothing company with tens of thousands of clients. (Compl. ¶¶ 6, 12.) From 2020 to 2024, Rich was a "clothier" in Tom James' Dallas office. (*Id.* ¶ 21.) Clothiers meet with prospective customers by appointment, in the customers' homes or offices, to style and fit them. (*Id.* ¶¶ 7–9.) Tom James closely guards its customer list,[2] which it alleges constitutes a trade secret. (*Id.* ¶¶ 11–15.) Tom James requires its clothiers, including Rich, to sign employee agreements that contain non-disclosure, non-competition, and non-solicitation provisions. (*Id.* ¶¶ 16–18, 22–24.) As relevant here, the Agreement required Rich, during his employment and for two years thereafter, not to (1) possess or disclose the customer list or use it to compete with Tom James (Agreement § 7(D)); (2) solicit any Tom James customer within a defined "Sales Territory," which is the 25-mile radius of the Dallas office he worked from and the "Zip Code zone" of each customer Rich sold clothing to during the last two years of his employment (*id.* § 5(B), (G)); or (3) work for a bespoke clothing competitor within the Sales Territory (*id.* § 5(C), (E)). The Complaint alleges that Rich is using

---

[1] The facts are drawn from the Complaint (Doc. No. 1) and are accepted as true for the purposes of the defendant's Rule 12(b)(6) motion.

[2] The Complaint refers alternately to a single customer list and multiple customer lists. (*Contrast, e.g.*, Compl. ¶ 18 ("[C]lothiers are prohibited from disclosing . . . Tom James's customer list."), *with, e.g., id.* ¶ 20 ("Tom James's customer lists . . . are password protected.").) Because the Agreement refers exclusively to one customer list (Agreement §§ 5(D), (E), (I), 7(A), (B), (D), 8), the court will do likewise.

Tom James' customer list, which he illicitly copied, to divert Tom James customers within the Sales Territory to his new, competing employer, Label, LLC. (Compl. ¶¶ 33, 35–41.)

## III. LEGAL STANDARDS

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 555–57. The court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6 Cir. 2016).

A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557).

## IV. DISCUSSION

Rich argues that the facts alleged in support of all the claims he seeks to dismiss are merely conclusory, "threadbare, 'fill-in-the-blank' legal allegations" that "could be leveled at literally any

3

former Tom James Clothier" and do not give rise to a plausible inference that he is liable on any of the Complaint's legal theories. (Doc. No. 22 at 1, 4–8.) In the alternative, Rich argues that the Complaint fails to state a claim for breach of fiduciary duty (Count V) because non-officer employees do not owe their employers a fiduciary duty. (*Id.* at 6–7.) In addition, Rich argues that the "detail-free" Complaint smacks of restraint of trade and that Tom James has brought suit to harass and punish him for moving to a competitor and to "discourag[e] other employees from either voluntarily terminating their employment with Plaintiff or risk[] involuntary termination by demanding fair treatment in the workplace." (*Id.* at 3–4; *see also* Doc. No. 26 at 1–2.)

The court addresses Rich's last argument first: even if Tom James had filed this lawsuit to punish its former salesperson for leaving, to discourage others from doing the same, and/or to enforce a contract in restraint of trade, that would not affect this court's analysis of the motion before it. Second, although the court agrees with the defendant that the plaintiff "leans heavily on the notion of a liberal pleading standard" (Doc. No. 26 at 1), the court also agrees with the plaintiff that it has alleged well-pleaded facts that, accepted as true, are sufficient for the court to plausibly infer that the defendant is liable for the misconduct alleged. As to all claims at issue, the facts alleged in support are not detailed. But the pleading standard does not require detail; it requires only "more than labels and conclusions, and a formulaic recitation" of the elements of a cause of action. *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020) (quoting *Twombly*, 550 U.S. at 555). Put another way, Rule 8 requires something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. In this case, the plaintiff does not merely recite the elements of each cause of action it brings. Rather, it alleges facts—albeit nonspecific facts, alleged on information and belief—in support of each element the defendant contests. On a motion to dismiss, such a pleading is sufficient. *Accord Hollowell v. Cincinnati Ventilating Co.*, 711 F.

4

Supp. 2d 751, 758 (E.D. Ky. 2010) ("[T]he complaint must 'contain either direct or inferential allegations respecting all the material elements [of a claim] to sustain a recovery under some viable legal theory.'" (quoting *Hunter v. Sec'y of U.S. Army,* 565 F.3d 986, 992 (6th Cir. 2009)).

A. **Tortious Interference with Prospective Economic Advantage or Business Relationships (Count II)** [3]

To state a claim for tortious interference with business relationships under Tennessee law, a plaintiff must adequately plead:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference.

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (citation modified); *see also BNA Assocs., LLC v. Goldman Sachs Specialty Lending Grp.*, 63 F.4th 1061, 1063–64 (6th Cir. 2023) (citing *Trau-Med*, 71 S.W.3d at 701). The Complaint alleges that Rich, in breach of the Agreement, used Tom James' customer list, which he illicitly copied, to

---

[3] Count II is styled as "Tortious Interference with Prospective Economic Advantage *or* Business Relationships." (Compl. At 9 (emphasis added).) It is not clear whether tortious interference with prospective economic advantage is meant to be synonymous with, or a claim in the alternative for, tortious interference with prospective business relationships. Neither party addresses the former in their briefs. (*See* Doc. No. 22 at 4 (mentioning "economic advantage" only when referring to Count II's caption); Doc. No. 24 at 6 (providing only the elements for intentional interference with prospective business relationships).) In any case, as best as this court can determine, "[t]he Tennessee courts have never recognized a claim for intentional interference with prospective economic advantage." *Smith v. Rivermont Care & Rehab. Ctr.*, No. 1:09-CV-108, 2010 WL 376612, at *6 (E.D. Tenn. Jan. 25, 2010) (quoting *Valley Prods. Co. v. Landmark*, 877 F. Supp. 1087, 1095 (W.D. Tenn. 1994), *aff'd*, 128 F.3d 398 (6th Cir. 1997)); *see also Gammons v. Adroit Med. Sys., Inc.*, No. 3:21-CV-173-TAV-DCP, 2023 WL 2700704, at *12 (E.D. Tenn. Mar. 29, 2023) (analyzing a claim for intentional interference with prospective economic advantage under the test for intentional interference with prospective business relationships), *aff'd*, 91 F.4th 820 (6th Cir. 2024). The court will therefore address only tortious interference with prospective business relationships at this stage.

5

"intentionally and maliciously interfere[] with Tom James's . . . business relationships . . . by diverting or attempting to divert one or more of Tom James's customers" and by "misappropriating Tom James's . . . trade secrets." (Compl. ¶¶ 54, 55.) The defendant argues that the Complaint fails to allege facts that, if true, would establish any of the last three elements. (Doc. No. 22 at 4.)

### 1. Intent

The defendant argues that the Complaint only "generically" alleges that he diverted Tom James' customers, which is a mere recitation of the intent element. (Doc. 22 at 5.) The plaintiff responds that the Complaint alleges that Rich "intentionally" interfered with its business relationship by diverting at least one of its prospective customers. (Doc. No. 24 at 6–7 (quoting Compl. ¶ 54).) The court finds that the plaintiff has plausibly alleged intent. The plaintiff does not merely allege that the defendant's conduct *incidentally* harmed its business relationships because they work in the same industry. *Accord S. Transp., Inc. v. Lyft, Inc.*, No. 16-02669, 2017 WL 2838207, at *8 (W.D. Tenn. June 30, 2017) (finding a pleading inadequate that alleged that "the parties compete in the same market and business gained by one party generally means business lost by the other party"). Nor does the plaintiff merely allege that the *conduct*, rather than the *interference with prospective business relationships* was intentional. *Accord Overnite Transp. Co. v. Teamsters Loc. Union No. 480*, No. M2002-02116-COA-R3CV, 2004 WL 383313, at *13 (Tenn. Ct. App. Feb. 27, 2004) ("[T]he allegation that the Union's conduct 'was intentional' does not satisfy the requirement of alleging that the Union intended to cause a breach in the business relationship at issue. Rather, Overnite must allege that the Union intentionally caused a breach in Overnite's relationships."), *aff'd*, 172 S.W.3d 507 (Tenn. 2005). Here, the Complaint alleges that Rich intentionally solicited people who might have bought clothing from Tom James—based on information contained in a proprietary customer list—to buy clothes from his new employer instead. That suffices, at the motion to dismiss stage, to satisfy the intent element.

6

### 2. Improper means or motive

Here again, the defendant argues that the Complaint only generically and conclusorily alleges that he misappropriated Tom James's customer list and diverted customers. (Doc. No. 22 at 5.) The plaintiff responds that the Complaint's allegations that Rich illicitly copied the customer list and used it to solicit its customers, in breach of contract and in breach of his duty of loyalty, are sufficient to meet the *improper means* element. (Doc. No. 24 at 7 (citations omitted).) Improper means are "means that are illegal, independently tortious, or that violate an established standard of a trade or profession." *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 176–77 (Tenn. Ct. App. 2007) (quoting *Trau-Med*, 71 S.W.3d at 701). "Examples of . . . tortious conduct include violations of statutes, . . . misuse of confidential information, or breach of a fiduciary duty." *Id.* The Complaint alleges that, by using trade secrets he stole from Tom James to divert business to his new employer (Compl. ¶ 54), Rich violated statutes, misused confidential information, and breached his fiduciary duty. (*See generally*, Compl.) The Complaint has adequately alleged improper means.

### 3. Damages

The defendant briefly argues that the Complaint does not plausibly allege damages, stating only that the Complaint does not "articulate any specific business relationship that has been harmed by Mr. Rich (or even a specific factual basis . . . to believe that a relationship has been harmed." (Doc. No. 22 at 5.) The plaintiff not unreasonably construes this argument as actually attacking the first element, identification of the business relationship, which, it argues, it has plausibly alleged. (*See* Doc. No. 24 at 8 (citing Compl. ¶ 53); *see also id.* at 6 (quoting Compl. ¶ 53 ("customers in the Sales Territory where Rich has done business on behalf of Tom James during the course of his employment with Tom James")).) The defendant does not explain why the plaintiff's identification of the potential relationships is insufficient, and the court does not see

7

why it would be, given that "a plaintiff in Tennessee needs to identify . . . only a 'class of persons' for *prospective* business relationships." *Assist-2-Sell, Inc. v. Assist-2-Build, LLC*, No. 1:05-CV-193, 2005 WL 3333276, at *7 (E.D. Tenn. Dec. 6, 2005) (emphasis in original); *see also Henrick v. Mealor*, No. 3:18-CV-00621, 2019 WL 3027013, at *4 (M.D. Tenn. July 11, 2019) (Campbell, J.) (collecting cases).

To the extent the defendant argues that the Complaint has insufficiently alleged damage resulting from the tortious interference, he does not explain why the Complaint, read as a whole, is insufficient in this regard. Tom James alleges that Rich diverted to his new employer potential customers whom Tom James had cultivated relationships with or compiled information about "at great expense." (Compl. ¶ 14.) Construing the Complaint in the plaintiff's favor, Tom James alleges that it lost sales because of the defendant's actions. While the facts alleged in support of damages could be described as "generic or boilerplate[,] [e]ven so, a plaintiff 'need not allege specific damages at the pleading stage to state a cause of action for tortious interference with business relations.'" *Spectrum Lighting & Controls, Inc. v. SESCO Lighting, Inc.*, No. 2:18-CV-02253-TLP-cgc, 2018 WL 5905935, at *3 (W.D. Tenn. Nov. 9, 2018) (quoting *Assist-2-Sell*, 2005 WL 3333276, at *8). Thus, the plaintiff has stated a claim for tortious interference with prospective business relationships.

**B.  Misappropriation of Trade Secrets (Counts III and IV)**

In Counts III and IV of the Complaint, the plaintiff alleges that the defendant misappropriated its customer list, a trade secret, in violation of the TUTSA and DTSA (Compl. ¶¶ 61–78).) Because the "elements of a DTSA claim are substantially the same as the elements of a TUTSA claim, . . . they can be analyzed together." *In re Island Indus., Inc.*, No. 23-5200, 2024 WL 869858, at *2 (6th Cir. Feb. 29, 2024) (citing *BNA Assocs., LLC v. Goldman Sachs Specialty Lending Grp.*, 602 F. Supp. 3d 1059, 1065 (M.D. Tenn. 2022) (Crenshaw, C.J.), *aff'd*, 63 F.4th

1061 (6th Cir. 2023)); *see also ChampionX, LLC v. Resonance Sys., Inc.*, 726 F. Supp. 3d 786, 804 (E.D. Tenn. 2024) (consolidating its analysis of whether the plaintiff stated a claim under the DTSA and TUTSA). "[T]he elements for a misappropriation of trade secrets claim are: (1) the existence of a trade secret; (2) misappropriation of the trade secret by the defendant; and (3) resulting detriment to the plaintiff." *ChampionX*, 726 F. Supp. 3d at 804 (quoting *BNA Assocs.*, 602 F. Supp. 3d at 1064).

Rich briefly argues only that the Complaint has failed to plausibly allege the second element. On this point, Rich repeats his argument that the facts alleged are conclusory: "absent from these allegations is any specific basis from which a court could infer that Mr. Rich either used these alleged trade secrets or obtained them by improper means." (Doc. No. 22 (adding that "[t]he Complaint does not provide any names, dates, or locations").) Tom James responds that it has adequately alleged that Rich copied and retained its customer list, a trade secret, which was forbidden under the Agreement (Doc. No. 24 at 11 (citing Compl. ¶ 39)) and that Rich used its customer list to solicit its customers. (*Id.* (citing Compl. ¶¶ 37–38, 41.) The court finds these allegations sufficient to allege misappropriation of a trade secret by the defendant. Because the defendant does not address the other elements, neither will the court.

### C. Breach of Fiduciary Duty (Count V)

The Complaint alleges that Rich owed Tom James a fiduciary duty, which he breached by converting Tom James' customer list and soliciting its customers to do business with a competitor, including while he was still employed by Tom James, to its financial detriment. (Compl. ¶¶ 80–84.) The defendant argues that Count V should be dismissed because Tennessee does not recognize breach of fiduciary duty claims against mere employees, and, in the alternative, that the Complaint fails to state a claim. (Doc. No. 22 at 6—8.) The plaintiff responds that courts sometimes find that employees owe their employers a fiduciary duty; that, even if Rich did not breach a fiduciary duty,

9

he breached a duty of loyalty; and that the Complaint plausibly alleges both claims. (Doc. No. 24 at 13–16.)

On the one hand, courts in this district have held that employers cannot bring breach of fiduciary duty claims against "mere employees," as opposed to officers. *See Wachter, Inc. v. Cabling Innovations, LLC*, 387 F. Supp. 3d 830, 844 (M.D. Tenn. 2019) (Richardson, J.) (collecting cases). On the other hand, the Agreement specifies that Rich agreed that, by doing work "that involve[d] the Company's trust of and reliance on" him, he owed Tom James a "fiduciary duty" that "appl[ied] to, among other tasks and activities . . . conduct prohibited by [the] Agreement." (Agreement § 6; *see also* Doc. No. 24 at 13–14.) And "whether or not a fiduciary or confidential relationship existed is a question of fact." *Town of Smyrna v. Mun. Gas Auth.*, 129 F. Supp. 3d 589, 606 (M.D. Tenn. 2015) (Sharp, J.) (quoting *Dickson v. Long,* 2009 WL 961784, at *8 (Tenn. Ct. App. Apr. 8, 2009)).

In any event, to the extent a claim for breach of fiduciary duty cannot be brought against an employee, the court construes the claim as one for breach of the duty of loyalty. *Accord PSC Indus., Inc. v. Johnson*, No. 3:19-CV-00362, 2021 WL 1663574, at *19 (M.D. Tenn. Apr. 28, 2021) (Richardson, J.) ("[T]his Court has not hesitated to construe a fiduciary duty claim as a claim for a breach of the duty of loyalty." (citing *ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 964 (M.D. Tenn. 2011) (Sharp, J.))).[4] Tennessee courts examine claims for breach of the duty

---

[4] The defendant argues that the court should not construe the claim for breach of fiduciary duty as a claim for breach of the duty of loyalty because the Complaint makes a distinction between the two. (Doc. No. 22 at 7 n.5 (citing Compl. ¶ 55).) While the defendant is correct that the Complaint alleges that he breached "his duties of loyalty and confidentiality to Tom James and breach[ed] his fiduciary duty to Tom James" (Compl. ¶ 55; *see also id.* ¶ 41), the Complaint does not bring a separate claim for breach of the duty of loyalty. *Accord Wachter, Inc. v. Cabling Innovations, LLC*, 387 F. Supp. 3d at 844 (dismissing a breach of fiduciary duty claim where the plaintiff brought both breach of fiduciary duty and loyalty claims).

of loyalty—sometimes referred to as a "fiduciary duty of loyalty"[5]—under the same test as for a breach of fiduciary duty claim. *See, e.g.*, *Nashville Tenn. Ventures v. McGill*, No. M2020-01111-COA-R3-CV, 2021 WL 2070133, at *5 (Tenn. Ct. App. May 24, 2021); *Morris v. ReVida Recovery Centers, LLC*, No. 3:22-CV-00931, 2024 WL 3836083, at *12 (M.D. Tenn. Aug. 15, 2024) (citations omitted); *Knox Trailers, Inc. v. Maples*, 581 F. Supp. 3d 1000, 1011 * n.1 (E.D. Tenn. 2022).

To state a claim for breach of a fiduciary duty, or duty of loyalty, a plaintiff must plead facts that, if true, would establish: "(1) a fiduciary relationship, (2) breach of the resulting fiduciary duty, and (3) injury to the plaintiff or benefit to the defendant as a result of that breach." *Nashville Tennessee Ventures*, 2021 WL 2070133, at *5 (quoting *Ann Taylor Realtors, Inc. v. Sporup*, No. W2010-00188-COA-R3-CV, 2010 WL 4939967 at *3 (Tenn. Ct. App. Dec. 3, 2010)).

The defendant restates his argument that the facts alleged in support of the claim for breach of the duty of loyalty, so construed, do not meet even the liberal pleading standard. (Doc. No. 22 at 8 ("Just as these conclusory allegations are insufficient to carry Plaintiff's pleading burden on Counts II, III, and IV, they are insufficient to claim a breach of fiduciary duty.").) But for the same reasons described above, the court finds that the plaintiff has stated a claim for breach of the duty of loyalty.

"In Tennessee, employees owe a fiduciary duty of loyalty to their employers." *Gold Spectrum CBD, LLC v. Johnson*, No. 2:23-CV-95, 2025 WL 1146266, at *4 (E.D. Tenn. Jan. 16,

---

[5] *See ProductiveMD*, 821 F. Supp. 2d at 964 (citing *Efird v. Clinic of Plastic & Reconstructive Surgery, P.A.*, 147 S.W.3d 208, 220 (Tenn. Ct. App. 2003)); *see also Morris*, 2024 WL 3836083, at *12 (citing *Comm'rs of Powell-Clinch Util. Dist. v. Utility Mgmt. Rev. Bd.*, 427 S.W.3d 375, 389 (Tenn. Ct. App. 2013)).

2025) (quoting *Nashville Tenn. Ventures*, 2021 WL 2070133, at *5). Because the defendant was the plaintiff's employee, the first element is met.

"The duty of loyalty requires an employee to 'act solely for the benefit of the employer in matters within the scope of his employment' and 'not engage in conduct that is adverse to the employer's interests.'" *Ecolab Inc. v. Ridley*, No. 1:22-CV-50, 2024 WL 2708740, at *18 (E.D. Tenn. Mar. 12, 2024) (quoting *Knott's Wholesale Foods, Inc. v. Azbell*, No. 1A-01-9510-CH-00459, 1996 WL 697943, at *3 (Tenn. Ct. App. Dec. 6, 1996)). "[E]xamples of breaches of loyalty duties in the employment context include acts of an employee in direct competition with the financial, proprietary, or business interests of an employer, thereby placing the personal interests of the employee before those of the employer[.]" *Id.* (quoting *Booth v. Fred's Inc.*, No. W2002-01414-COA-R3-CV, 2003 WL 21998410, at *13 (Tenn. Ct. App. Aug. 19, 2003). Here, as the court has explained, the Complaint adequately alleges that Rich used propriety information he illicitly copied to divert Tom James' customers to its detriment and for his own and his new employers' benefit. Those allegations satisfy the second and third elements. The plaintiff has stated a claim for breach of fiduciary duty or, to the extent such a claim against a mere employee is impermissible, a breach of the duty of loyalty.

## V.  CONCLUSION

For the foregoing reasons, the defendant's Partial Motion to Dismiss will be denied. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

12